# In The United States Court Of Appeals For The Fourth Circuit

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**JIMMY MCKOY ROUSE,**

**Defendant-Appellant.**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NO. 19-CR-194-D-1 (DEVER, J.)

---

## ANSWERING BRIEF FOR THE UNITED STATES

---

MICHAEL F. EASLEY, JR.
United States Attorney
Eastern District of North Carolina

DAVID A. BRAGDON
Appellate Chief
Eastern District of North Carolina

KENNETH A. POLITE, JR.
Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

W. CONNOR WINN
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Ste. 1264
Washington, DC 20530
(202) 669-6551
William.Winn@usdoj.gov

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF THE ISSUES ................................................... 1

STATEMENT OF THE CASE ..................................................... 1

    I.    Statement Of Facts ................................................. 2

    II.   Course Of Proceedings ............................................. 4

    III.  Rulings Presented For Review ................................. 5

SUMMARY OF ARGUMENT ................................................... 5

ARGUMENT ...................................................................... 7

    I.    The District Court Permissibly Admitted Testimony From
The Government's Forensic Scientists. ...................... 7

        A.    Background .................................................. 7

        B.    Standard Of Review ...................................... 12

        C.    Argument .................................................... 12

            1.    Federal Rule Of Evidence 702 Allowed The
Government Experts' Testimony. ..................... 12

            2.    No Reversible Error Under Federal Rule Of Criminal
Procedure 16 Exists Here. ............................ 17

    II.   The District Court Permissibly Excluded Expert Testimony
That Rouse Noticed On The Morning Of Trial. ............ 22

        A.    Background .................................................. 22

        B.    Standard Of Review ...................................... 24

        C.    Argument .................................................... 24

    III.  The District Court Imposed A Procedurally And
Substantively Reasonable Sentence. ........................ 28

A.      Background ................................................................. 28

B.      Standard Of Review ..................................................... 33

C.      Argument .................................................................... 33

    1.      The District Court Imposed A Procedurally
        Reasonable Sentence. ........................................... 33

    2.      The District Court Imposed A Substantively
        Reasonable Sentence. ........................................... 42

CONCLUSION ....................................................................... 44

STATEMENT REGARDING ORAL ARGUMENT ................................ 45

CERTIFICATE OF COMPLIANCE ........................................... 46

CERTIFICATE OF SERVICE ................................................... 47

# TABLE OF AUTHORITIES

## Cases

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ......................................................... 9, 13, 15

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*,
892 F.3d 624 (4th Cir. 2018) ........................................... 13, 15

*Taylor v. Illinois*,
484 U.S. 400 (1988) ............................................................... 28

*United States v. Barnett*,
48 F.4th 216 (4th Cir. 2022) ........................................... 33, 39

*United States v. Barronette*,
46 F.4th 177 (4th Cir. 2022) ........................................... 33, 38

*United States v. Bell*,
667 F.3d 431 (4th Cir. 2011) ........................................... 35, 36

*United States v. Bennett*,
986 F.3d 389 (4th Cir. 2021) ................................................ 42

*United States v. Crawford*,
734 F.3d 339 (4th Cir. 2013) ........................................... 35, 36

*United States v. D'Anjou*,
16 F.3d 604 (4th Cir. 1994) ................................................. 36

*United States v. Dolan*,
544 F.2d 1219 (4th Cir. 1976) .............................................. 16

*United States v. Dorsey*,
45 F.3d 809 (4th Cir. 1995) ......................................... 6, 24, 25

*United States v. Ebert*,
61 F.4th 394 (4th Cir. 2023) ................................................ 16

*United States v. Fernandez Sanchez,*
  46 F.4th 211 (4th Cir. 2022) ................................................................. 18

*United States v. Fowler,*
  58 F.4th 142 (4th Cir. 2023) .................................................33, 34, 36, 37

*United States v. Friend,*
  2 F.4th 369 (4th Cir. 2021) ................................................................... 41

*United States v. Garcia-Lagunas,*
  835 F.3d 479 (4th Cir. 2016) ....................................................12, 18, 19, 21

*United States v. Gillespie,*
  27 F.4th 934 (4th Cir. 2022) ........................................................ 42, 43, 44

*United States v. Gomez-Jimenez,*
  750 F.3d 370 (4th Cir. 2014) ................................................................. 32

*United States v. Gomez-Paz,*
  No. 10-cr-567, 2011 WL 4345891 (D. Colo. Sept. 16, 2011) ................... 25

*United States v. Gondres-Medrano,*
  3 F.4th 708 (4th Cir. 2021) ................................................................... 40

*United States v. Hargrove,*
  701 F.3d 156 (4th Cir. 2012) .............................................................32, 33

*United States v. Harwell,*
  849 F. App'x 437 (4th Cir. 2021) ........................................................... 38

*United States v. Holmes,*
  670 F.3d 586 (4th Cir. 2012) ...................................................... 6, 24, 25, 26

*United States v. Iglesias,*
  881 F.2d 1519 (9th Cir. 1989) ................................................................ 20

*United States v. Iskander,*
  407 F.3d 232 (4th Cir. 2005) ................................................................. 26

*United States v. Jackson,*
  124 F.3d 607 (4th Cir. 1997) ................................................................. 18

*United States v. Lundy*,
    676 F.3d 444 (5th Cir. 2012) ................................................................ 28

*United States v. Malloy*,
    568 F.3d 166 (4th Cir. 2009) ................................................................ 28

*United States v. McDonald*,
    28 F.4th 553 (4th Cir. 2022) ................................................................ 41

*United States v. McDonald*,
    43 F.4th 1090 (10th Cir. 2022) ............................................................ 38

*United States v. McLean*,
    715 F.3d 129 (4th Cir. 2013) ................................................. 18, 21, 27

*United States v. Miller*,
    41 F.4th 302 (4th Cir. 2022) ..........................................................12, 19

*United States v. Montes-Pineda*,
    445 F.3d 375 (4th Cir. 2006) ................................................................ 41

*United States v. Moreland*,
    437 F.3d 424 (4th Cir. 2006) ..........................................................13, 14

*United States v. Muslim*,
    944 F.3d 154 (4th Cir. 2019) ................................................................ 12

*United States v. Nance*,
    957 F.3d 204 (4th Cir. 2020) ..........................................................40, 41

*United States v. Prince-Oyibo*,
    320 F.3d 494 (4th Cir. 2003) ................................................................ 28

*United States v. Rich*,
    14 F.4th 489 (6th Cir. 2021) ................................................................ 38

*United States v. Scheffer*,
    523 U.S. 303 (1998) .............................................................................. 28

*United States v. Silva*,
    889 F.3d 704 (10th Cir. 2018) .............................................................. 15

*United States v. Slager*,
    912 F.3d 224 (4th Cir. 2019) .................................................... 36

*United States v. Smith*,
    919 F.3d 825 (4th Cir. 2019) ...........................................12, 13

*United States v. Terry*,
    916 F.2d 157 (4th Cir. 1990) ...........................................36, 37

*United States v. Uzenski*,
    434 F.3d 690 (4th Cir. 2006) .................................................... 20

**Statutes**

18 U.S.C. § 2 ............................................................................... 2, 4

18 U.S.C. § 3231 ............................................................................... 1

18 U.S.C. § 3553 ...................................................................... passim

18 U.S.C. § 3742 ............................................................................... 1

18 U.S.C. § 922 .....................................................................2, 4, 31

18 U.S.C. § 924 .............................................................. 2, 4, 32, 40

21 U.S.C. § 841 ........................................................................... 2, 4

21 U.S.C. § 846 ........................................................................... 2, 4

28 U.S.C. § 1291 ............................................................................... 1

**Rules and Sentencing Guidelines**

Fed. R. Crim. P. 16 ................................................................ passim

Fed. R. Crim. P. 52 ......................................................................... 16

Fed. R. Evid. 103 ............................................................................. 16

Fed. R. Evid. 702 ....................................................... 6, 9, 13, 16

U.S.S.G. § 2D1.1 ......................................................28, 29, 31, 36

U.S.S.G. § 5K1.1 ............................................................................. 44

## JURISDICTIONAL STATEMENT

Defendant Jimmy Rouse appeals his judgment of conviction and sentence. The district court (Dever, J.) had jurisdiction under 18 U.S.C. § 3231 and entered judgment on August 10, 2022. J.A.868.[1] Rouse filed a timely notice of appeal on August 10, 2022, and a timely subsequent notice of appeal on August 15, 2022. J.A.866; J.A.876. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1. Whether the district court reversibly erred by allowing the government's experts to testify about the controlled substances in this case.

2. Whether the district court reversibly erred by excluding Rouse's proposed expert testimony, which Rouse disclosed hours before trial.

3. Whether the district court abused its discretion by imposing a procedurally or substantively unreasonable sentence on Rouse.

## STATEMENT OF THE CASE

Following a three-day jury trial in the United States District Court for the Eastern District of North Carolina, Rouse was convicted on nine counts: one count of conspiring to distribute 50 grams or more of methamphetamine and a

---

[1] "J.A." refers to the Joint Appendix. "S.A" refers to the Supplemental Appendix. "Br." refers to Rouse's opening brief.

quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C), and 846; three counts of distributing a methamphetamine-containing substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); one count of distributing a heroin-containing substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; three counts of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii) (2019); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2019). J.A.868-69. The district court imposed a total sentence of 600 months of imprisonment, to be followed by five years of supervised release. J.A.870-71.

## I.    Statement Of Facts[2]

Rouse has trafficked drugs in Sampson County, North Carolina, for many years. J.A.10; J.A.284. Between 2016 and late 2019, he and his girlfriend, Diona Rich, dealt heroin and large amounts of crystal methamphetamine in that area. J.A.573; J.A.576; J.A.611-615; J.A.622. Although Rouse was the primary dealer, Rich took over when he was away from home or imprisoned. J.A.615-16; J.A.654; J.A.673-74.

---

[2] Consistent with the jury's guilty verdicts, the facts are presented in the light most favorable to the government.

Rich and Rouse often bought these drugs from suppliers outside of Sampson County. *See, e.g.*, J.A.249 (co-conspirator Tierra Atkins testifying that he sold Rouse nine ounces (255 grams) of crystal methamphetamine twice a week for the better part of a year). They then sold these drugs from their ever-shifting residences in Sampson County, J.A.610-11; J.A.613-14; J.A.621-22, providing Sampson County's residents with crystal methamphetamine for both resale and personal use, J.A.202-03 (Rich's mother testifying that she bought crystal methamphetamine from them for these reasons); J.A.576-78 (acquaintance testifying to the same). The crystal methamphetamine Rich and Rouse sold was particularly potent. *See, e.g.*, S.A.1-3; S.A.6-7 (reflecting that the crystal methamphetamine obtained by law enforcement from Rouse and Rich was 75% to 94% pure methamphetamine); S.A.7 (more than 50 grams pure methamphetamine contained in one sample alone).

In early 2019, the Sampson County Sherriff's Office actively investigated Rouse and his drug-trafficking operation. J.A.284-85. That office used a confidential informant to buy heroin and crystal methamphetamine from Rouse and Rich on six occasions, J.A.285; J.A.290; J.A.296; J.A.307; J.A.316; J.A.369, and, through that informant and the video footage he obtained, learned that Rouse possessed a firearm during at least three of those buys, J.A.301-02; J.A.309; J.A.357-58. Then, in October 2019, while Rouse was on probation

from a recent stint in prison, Sampson County officers helped execute a probation search of Rouse and Rich's current residence and found crystal methamphetamine, firearms, and drug-trafficking paraphernalia. J.A.507-08; J.A.518-24. Law enforcement then arrested Rouse and Rich. J.A.653; 657.

## II. Course Of Proceedings

In September 2021, a federal grand jury sitting in the Eastern District of North Carolina returned a second superseding indictment based on these events, charging Rouse with: one count of conspiring to distribute 50 grams or more of methamphetamine and a quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C), and 846; three counts of distributing a methamphetamine-containing substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); one count of distributing a heroin-containing substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; three counts of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii) (2019); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2019). J.A.43-50.

A jury found Rouse guilty on all counts. J.A.803-04. The district court imposed a total sentence of 600 months of imprisonment, J.A.870, which fell below the sentence the district court calculated under the advisory Sentencing Guidelines given Rouse's extensive criminal history and offense conduct,

J.A.840-41.  The court also imposed an aggregate five-year term of supervised release.  J.A.871.

## III.   Rulings Presented For Review

On appeal, Rouse challenges the district court's decisions to:  (1) allow the government's forensic scientists to testify, J.A.485-86; (2) exclude Rouse's proposed expert testimony, J.A.487-89; and (3) impose a below-Guidelines sentence of 600 months of imprisonment on Rouse, J.A.860-61.

## SUMMARY OF ARGUMENT

This Court should affirm Rouse's convictions and sentence.  Across the board, his arguments require him to show that the district court at least abused its discretion and reversibly erred in doing so.  But Rouse cannot clear that high bar based on the evidentiary and sentencing errors he alleges here.

1.    Rouse's convictions rested on proper expert testimony.  The district court reasonably admitted testimony from the government's experts about the identity, weight, and purity of the controlled substances in this case.  And it prudently prevented Rouse from ambushing the government with expert testimony noticed on the first day of trial.  Neither decision constituted an abuse of discretion; nor did either decision change the outcome at trial.

As for the government's experts, the district court had a sound basis to reject Rouse's sole objection to their testimony, *i.e.*, whether they had "reliably

5

applied" their principles and methods in this case. Fed. R. Evid. 702. The court heard from these experts outside the presence of the jury and learned that they carefully ran generally accepted scientific tests when analyzing the drugs seized from Rouse. Their answers to questions from the government and Rouse's counsel convinced the court that their methodologies in this case were reliable, and it therefore rightly allowed them to testify. And even if that testimony should have for some reason been excluded, the jury would still have had ample reason to convict based on testimony from Rouse's co-conspirators.

Meanwhile, the district court understandably prevented Rouse from calling a defense expert witness, noticed on the first day of trial, to attack the methodologies of the government's experts. Experts noticed at such a late hour may be excluded from trial. *See United States v. Holmes*, 670 F.3d 586, 598 (4th Cir. 2012); *United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995). And here, the court acted within its discretion in concluding that exclusion was the proper remedy because the government could not prepare to cross examine this new expert witness while putting on its case-in-chief and because the government had satisfied its obligations under Federal Rule of Criminal Procedure 16. The court therefore did not abuse its discretion in preventing Rouse's expert from testifying, and any error was not prejudicial.

2.     Nothing about Rouse's below-Guidelines sentence warrants reversal.   The district court followed a thorough sentencing procedure, calculating Rouse's Guidelines range correctly, weighing the sentencing factors listed in 18 U.S.C. § 3553(a), and explaining how they applied in this case.  The court then selected an individualized sentence that fit both Rouse and his offenses.  His sentence should stand.

## ARGUMENT

## I.     The District Court Permissibly Admitted Testimony From The Government's Forensic Scientists.

Rouse contends (Br. 32-37) that the district court reversibly erred when it admitted the government's expert testimony concerning the controlled substances seized in this case.  He is wrong.

### A.     Background

Rouse's trial was originally set for October 4, 2021.  J.A.20.   In preparation for that trial, the government disclosed to Rouse in September 2021 that it intended to call forensic scientists from the Drug Enforcement Administration and the North Carolina State Crime Lab.  J.A.51.   The government's notice of expert testimony explained that these witnesses' opinions concerned the "chemical composition" and "weight" of the "various controlled substances seized" in this case and stated that the government would provide to defense counsel these witnesses' curriculum vitaes and lab reports.

J.A.51-52. The lab reports further specified the identity, purity, and weight of those controlled substances and described how the experts made those determinations (*i.e.*, gas chromatography, mass spectrometry, and infrared spectrometry). *See, e.g.*, S.A.4; S.A.7.

The government believed at that point that it had already turned over to Rouse the lab reports concerning the controlled substances in this case. J.A.97. But on October 4, the first day of Rouse's planned trial, it became clear that Rouse had not received the lab reports concerning the expert's methamphetamine analyses, J.A.96; J.A.107-08, due to a "good faith, technological problem" in the government's discovery productions, J.A.124. The district court therefore continued Rouse's trial to January 2022, to allow the government to re-produce this discovery and to permit Rouse's counsel to prepare for cross-examination. J.A.124-25. The government produced this missing discovery soon after. J.A.333-34; *see also* J.A.132-33 (defense counsel confirming receipt).

On December 31, 2021, four days before Rouse's new trial date, he moved "to limit or exclude the anticipated testimony from a DEA forensic chemist on the identification, quantity, and quality of alleged methamphetamine seized in this case." J.A.132. He later clarified that he also sought to exclude testimony from the heroin expert. J.A.882. He claimed that the "laboratory reports" that

he had received had not "address[ed] many issues pertinent to the relevancy and reliability thresholds" for expert testimony under Federal Rule of Evidence 702, including the relevant "chain of custody," "laboratory protocols and accreditation," or "calibration and maintenance" of the testing instruments used. J.A.134-35. Rouse therefore requested "a hearing on the admissibility of" the government's forensic scientists' "opinion[s] outside the presence of the jury" under Rule 702. J.A.134; *accord* J.A.132 (reiterating request and citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). On the next business day, the government provided defense counsel with additional documents, J.A.330-31, that contained the "raw data" underlying the methamphetamine and heroin testing, J.A.474; J.A.484, and outlined the various testing procedures the experts had used to analyze the methamphetamine and heroin, *see* J.A.475-78; J.A.484-85.[3]

When the district court took up Rouse's Rule 702 motion at trial, Rouse maintained his objection that the government had not established that its experts had "reliably applied" their generally sound tests in this case. J.A.330. He had no other issues with their proposed testimony under that rule. *See* J.A.330-31

---

[3] Although Rouse had previously filed a generic discovery request for discoverable materials under Federal Rule of Criminal Procedure 16, S.A.20-37, he never specifically requested documentary evidence concerning the many issues he identified in his motion in limine, *see* J.A.334; J.A.880.

(agreeing that these experts were qualified, had relevant opinions, possessed sufficient facts and data when reaching those opinions, and relied on sound scientific methods). The court then granted Rouse's request to examine the government's experts about how they conducted the controlled-substances testing in this case. J.A.336; J.A.340-51; J.A.469-85.

When Rouse examined these experts outside the presence of the jury, they explained how they conducted that testing. They had identified each controlled substance using multiple well-established methods (including gas chromatography, mass spectrometry, and infrared spectroscopy). J.A.345; J.A.350; J.A.482. The experts also had run "blank" tests, when appropriate, on their equipment to prevent cross-contamination, J.A.478; J.A.485, and had used representative samples of each controlled substance for testing, J.A.346-47; S.A.4. The experts had then compared the results of their tests against appropriate "reference materials" or "library spectra." J.A.351; J.A.559. And, when relevant, they determined what level of uncertainty accompanied their weight and purity measurements. J.A.477; S.A.5. Finally, the government's methamphetamine expert acknowledged that the data produced to Rouse did not reveal when the instruments he used were last "calibrated or maintained." J.A.471. The heroin expert explained that Rouse had the calibration and maintenance data for the instruments she had used. J.A.484-85.

In light all this, the district court denied Rouse's motion to exclude the experts' testimony under Federal Rule of Evidence 702. It found "that each of these witnesses [was] qualified" and possessed "expert, scientific, technical or other specialized knowledge" that would "help the trier of fact understand the evidence or determine a fact in issue." J.A.486. It further found that, in reaching their conclusions, these experts had "sufficient facts or data," relied on "reliable principles and methods," and "reliably applied th[ose] principles and methods to the facts of the case." J.A.486.

The district court then admitted these experts' testimonies and lab reports at trial. The experts explained the meaning of the lab reports' figures concerning the identity, weight, and purity of the controlled substances in this case, J.A.537-38; J.A.556-58, and Rouse cross examined them about how they arrived at those conclusions, *see, e.g.*, J.A.542-44; J.A.546-48; J.A.564-65. On cross-examination, the government's methamphetamine expert explained that he did not know the last calibration-and-maintenance date for the instruments he had used, but those "instruments have their monthly maintenance performed; and if not, [are] taken out of service." J.A.548; *see also* J.A.549 (explaining on redirect that he would know if those machines were not "working properly" and that they were "working properly" in this case).

## B.    Standard Of Review

This Court reviews for an abuse of discretion the decision to admit expert testimony under Federal Rule of Evidence 702.  *See United States v. Muslim*, 944 F.3d 154, 161 (4th Cir. 2019).  It also applies, at most, plain-error review when considering an unpreserved argument to exclude expert testimony based on a discovery violation under Federal Rule of Criminal Procedure 16.  *Infra* at 17-18; *see United States v. Garcia-Lagunas*, 835 F.3d 479, 494 (4th Cir. 2016).  "To establish plain error, the appealing party must show that an error (1) was made, (2) is plain, and (3) affects substantial rights."  *United States v. Miller*, 41 F.4th 302, 310 (4th Cir. 2022) (citation and ellipsis omitted).  "[E]ven if an appellant makes this three-part showing, an appellate court may exercise its discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* at 311 (citation omitted).

## C.    Argument

### 1.    Federal Rule Of Evidence 702 Allowed The Government Experts' Testimony.

District courts play a "gatekeeping role" when it comes to admitting expert testimony at trial.  *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).  They must thus find by a preponderance of the evidence that testimony by a qualified expert is relevant and also "reliable"—*i.e.*, "based on sufficient facts or data" and "the product of reliable principles and methods" that were "reliably

applied" to those facts—before allowing that testimony to come before a jury. Fed. R. Evid. 702(b)-(d); *see also Smith*, 919 F.3d at 835; *Daubert*, 509 U.S. at 592 n.10. In making these determinations, "courts must look to the entire process that produced an opinion" to determine whether an expert's opinion is sufficiently reliable for the jury. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 638 (4th Cir. 2018).

Although a district court's review is meaningful, "the rejection of expert testimony is the exception rather than the rule." *Smith*, 919 F.3d at 835 (citation omitted). "A district court 'is not intended to serve as a replacement for the adversary system'" when it comes to probing an expert's opinion, *id.* (citation omitted), and thus "[t]he court need not determine that the proffered expert testimony is irrefutable or certainly correct," *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006), *overruled in part on other grounds by Rita v. United States*, 551 U.S. 338 (2007). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The district court applied these standards and reasonably permitted the government's experts to testify as to the identity, weight, and purity of the controlled substances in this case. Rouse contested only whether those experts

reliably applied their methods.  J.A.330-31.  On that front, these witnesses used "testing methods [] accepted in the relevant scientific community" that "were subject to quality control measures." *Moreland*, 437 F.3d at 431; *supra* at 10. They also testified to "the standards against which [their] test results were measured." *Moreland*, 437 F.3d at 431; *supra* at 10.  And they calculated the scientific uncertainty that accompanied their measurements. *Supra* at 10.  All this supported a finding by a preponderance of the evidence that the government experts reliably tested the controlled substances here. *See Moreland*, 437 F.3d at 431 (finding no abuse of discretion in similar circumstances).

Rouse narrowly contends (Br. 36) that the district court abused its discretion in finding that the government experts reliably ran these tests because no evidence revealed (at the time of the court's admissibility ruling) when the instruments they used were "last calibrated, maintained, or cleaned."  That is not entirely accurate. *See* J.A.484-85 (heroin expert did disclose such data).  In any event, a lack of testimony or data regarding the instruments' last calibration-and-maintenance date did not demonstrate that they were malfunctioning; instead, their calibration and maintenance statuses were simply unknown.  The court could reasonably weigh that uncertainty against the other testimony from the government's experts and still permissibly find that they reliably applied their methods and principles in this case.  After all, the government's burden of proof

was only a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10; *cf. In re Lipitor*, 892 F.3d at 637-38 ("In some cases, no individual methodological or application discrepancy may be sufficient to independently justify exclusion of an expert's testimony."); *United States v. Silva*, 889 F.3d 704, 718 (10th Cir. 2018) ("Questions about errors in the implementation of otherwise-reliable DNA methodology typically 'go to the weight that the trier of fact should accord the evidence, rather than its admissibility.'" (citation omitted)).

Rouse also remained free to explore his calibration and maintenance point through "[v]igorous cross examination." *Daubert*, 509 U.S. at 596. Indeed, both he and the government later questioned these witnesses in front of the jury about Rouse's calibration and maintenance concerns. The experts' answers confirmed that the district court did not err in admitting their testimony. *See* J.A.548-49 (methamphetamine expert explaining that the instruments are maintained on a "monthly" basis or otherwise "taken out of service," that the lab "review[s] our data to make sure that it is consistent with proper operation," and that the "machines were working properly" with regard to the methamphetamine samples in this case); J.A.560-61 (heroin expert affirming that she would realize if her testing instruments "were not working properly" and that they were "working properly" here).

Regardless, even if the district court abused its discretion in admitting the experts' testimony and lab reports under Rule 702, that error would prove harmless here. "Erroneously admitted evidence is harmless if a reviewing court is able to say, with fair assurance, after pondering all that happened without stripping erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Ebert*, 61 F.4th 394, 404 (4th Cir. 2023); *accord* Fed. R. Crim. P. 52(a); Fed. R. Evid. 103(a).

Even without this expert testimony, the circumstantial evidence and lay opinion testimony in this case readily permitted the government to prove that Rouse trafficked both heroin and methamphetamine. *See United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976) (affirming that lay opinions and circumstantial evidence may establish a controlled substance's identity). Rouse's co-conspirators were all familiar with heroin and crystal methamphetamine and confirmed that he regularly dealt those drugs. *See, e.g.*, J.A.201-03; J.A.218; J.A.249; J.A.255; J.A.576-77; J.A.618; J.A.622. Furthermore, the government elicited testimony from a confidential informant and a law enforcement officer familiar with these substances about the controlled buys of heroin and crystal methamphetamine that formed the basis for Counts Two, Four, Six, and Eight. J.A.285-90; J.A.296-303; J.A.307-10; J.A.353-55; J.A.436-50.

This same evidence also overwhelmingly demonstrated that Rouse trafficked more than 50 grams of methamphetamine between 2016 and his arrest in October 2019, as Count One charged. *See* J.A.43-44. Granted, Rouse dealt in crystal methamphetamine, not "pure" methamphetamine, and the purity of crystal methamphetamine can vary. But Rouse's co-conspirators recalled him regularly trafficking large volumes of crystal methamphetamine between January 2016 and October 2019, easily demonstrating that, no matter the purity of that drug, Rouse trafficked over fifty grams of "methamphetamine" during that three-year span. *See, e.g.*, J.A.221 (witness recalling that Rouse purchased ten ounces (140 grams) of crystal methamphetamine on multiple occasions); J.A.249 (supplier explaining that Rouse bought "nine ounces" (126 grams) of crystal methamphetamine "twice a week" from late 2018 until September 2019); J.A.614 (Rich recalling Rouse selling crystal methamphetamine to several people a day); J.A.618 (Rich recalling Rouse having two to four ounces (28 to 56 grams) of crystal methamphetamine on him at a time).

### 2. No Reversible Error Under Federal Rule Of Criminal Procedure 16 Exists Here.

Rouse appears to suggest (Br. 35) briefly that the district court also should have excluded this expert testimony based on violations of Federal Rule of Criminal Procedure 16(a)(1)(F) and (G) (2021). This Court should not entertain that argument for two reasons. First, it is waived because his opening brief takes,

at most, only "a passing shot at the issue." *United States v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022); *see* Br. 35, 40.

Second, the invited-error doctrine bars any such claim. That doctrine prohibits parties from asking a court "to take a step in a case and later be convicted of error, because [the court] has complied with such request." *United States v. Jackson*, 124 F.3d 607, 617 (4th Cir. 1997). It applies here because Rouse asked the district court to remedy any alleged Rule 16 violation by providing him with an opportunity to voir dire the government's experts (he moved to exclude them, by contrast, under Federal Rule of Evidence 702). J.A.132; J.A.333. The court, without even finding a Rule 16 violation, provided Rouse with his desired voir-dire remedy. J.A.336; J.A.340-51; J.A.469-85; *see also United States v. McLean*, 715 F.3d 129, 142-43 (4th Cir. 2013) (affirming that voir dire can cure Rule 16 violations). Rouse therefore cannot now assert that these witnesses should have been excluded based on alleged Rule 16 violations, when he himself convinced the district court to select a different remedy.

Even if Rouse could challenge the government's Rule 16 disclosures here, this Court could review that challenge only for plain error, as Rouse did not seek to exclude these experts below on this ground. *See Garcia-Lagunas*, 835 F.3d at 494. In other words, Rouse would have to show that the government plainly violated its Rule 16 obligations to summarize for Rouse its experts'

qualifications, "opinions," and "bases" for those opinions, Fed. R. Crim. P. 16(a)(1)(G) (2021), or to provide Rouse with the "results" and "reports" of the tests run in this case, Fed. R. Crim. P. 16(a)(1)(F) (2021).[4] He must then show that any such violation implicated his "substantial rights" by "affect[ing] the outcome of the district court proceedings," *Garcia-Lagunas*, 835 F.3d at 493 (citation omitted), and that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings," *Miller*, 41 F.4th at 311.

Rouse has not met that standard. To start, no error, let alone plain error, infected the government's Rule 16 disclosures. Between the government's notice of expert testimony and lab reports (incorporated into the government's Rule 16 notice), Rouse knew these experts' qualifications, conclusions, and bases for those conclusions. *See* J.A.51-52; J.A.138-46; S.A.4-5. In short, these documents revealed that qualified forensic analysts tested the controlled substances seized in this case using well-known scientific testing (gas

---

[4] On December 1, 2022, a new version of Rule 16(a)(1)(G) came into effect. That rule now requires the government to disclose "a complete statement of all opinions that the government will elicit" from an expert witness; "the bases and reasons" for those opinions; "the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii). Rule 16(a)(1)(G)(ii) now also requires a district court to "set a time for the government to make its disclosures."

chromatography, mass spectrometry, and infrared spectrometry) and determined the identity, weight, and purity of those substances (as reflected in the lab reports). That satisfied the government's obligation under Rule 16(a)(1)(G), and the government's disclosure of the lab reports further satisfied its obligation under Rule 16(a)(1)(F). J.A.486-88 (district court agreeing).

Rouse vaguely suggests (Br. 35) that the government's obligations under Rule 16(a)(1)(F) and (G) required it to turn over the underlying data for its methamphetamine analyses and the calibration and maintenance histories for the machines used in those analyses. But as the district court correctly recognized, the plain text of those rules does not require such disclosure. J.A.488. That sort of data is not a "written summary" of an expert's "opinions" or the "bases" for those "opinions." Fed. R. Crim. P. 16(a)(1)(G) (2021). Nor is it a "result" or "report" discoverable under Rule 16(a)(1)(F). *See United States v. Uzenski*, 434 F.3d 690, 709 (4th Cir. 2006) (explaining that "the Government was not required to release [laboratory] notes" underlying its expert's final report, where defendant conceded that such notes were not a "result" or "report" under Rule 16(a)(1)(F)); *United States v. Iglesias*, 881 F.2d 1519, 1523 (9th Cir. 1989) (explaining that "internal log notes" lack "the requisite formality or finality to be considered either a 'report' or a 'result'").

Even if the government had plainly violated Rule 16, Rouse still could not establish that such a violation and the testimony of the government's experts affected his substantial rights or the fairness, integrity, or public reputation of these proceedings. Certainly, nothing about the government experts' trial testimony took Rouse "by surprise." *Garcia-Lagunas*, 835 F.3d at 494. The experts' conclusions mirrored the lab reports that the government turned over before trial, meaning the purpose of Rule 16's disclosure requirements was satisfied. *See id.* And again, even without that expert testimony, substantial other evidence proved to the jury that the substances seized from Rouse were crystal methamphetamine and heroin and that Rouse trafficked large quantities of those drugs over a three-year period. *See supra* at 16-17.

Indeed, any prejudice caused by the non-disclosure of data concerning the calibration of the machines used to test the methamphetamine in this case or Rouse's "belated" access to the data underlying the gas chromatography and mass spectrometry analyses was at most very slight.[5] Rouse had the opportunity to explore his calibration and testing concerns with the governments' experts through a *Daubert* hearing. *See McLean*, 715 F.3d at 142-43 (noting that this may remedy a Rule 16 violation). Then, at trial, he had almost all the testing data he

---

[5] Again, Rouse had the calibration data for the machines used to test the heroin in this case. J.A.484-85.

desired to attack these witnesses' conclusions during cross-examination. J.A.348-49 (underlying data for methamphetamine analysis); J.A.484-85 (underlying and calibration data for heroin testing). And he asked the government expert about the calibration status of the machines used to test the methamphetamine in this case—the only data he lacked—and learned those machines were maintained on a "monthly" basis. J.A.548. In short, any Rule 16 violation did not tip the scales here.

## II. The District Court Permissibly Excluded Expert Testimony That Rouse Noticed On The Morning Of Trial.

Rouse next maintains (Br. 37-40) that the district court abused its discretion when it excluded his proposed expert testimony, even though Rouse disclosed that testimony hours before trial began. That argument lacks merit.

### A. Background

In early October 2021, Rouse began consulting with a chemist about the government's controlled-substances analyses. J.A.336. Rouse's counsel intended to use this chemist "as a consulting expert" to enhance his cross-examination of the government's expert witnesses. J.A.336. To that end, Rouse had available to him, as of October 2021, the expert summaries and lab reports that the government had provided under Federal Rule of Criminal Procedure 16. J.A.333-34. Then, as discussed above, when Rouse filed a motion in limine challenging the reliability of the government experts' testing methods, the

government promptly provided additional notes and instrument data concerning the controlled-substances testing in this case. *See supra* at 9; J.A.331-32; J.A.334.

On the morning of trial, Rouse noticed his intent to call his consulting expert to testify at trial. J.A.147. He proposed having this witness testify to "what constitutes the reliable methods and process for the identification, weighing, and purity determinations of controlled substances, including methamphetamine." J.A.147. That expert would further testify that "the Government's experts' analysis, based on the documents produced so far, of controlled substances in this case lack[ed] reliability." J.A.147; *see also* J.A.150-59 (preliminary summary of findings and curriculum vitae). The government moved to exclude this proposed testimony for lack of timely notice. J.A.886.

The district court granted that motion. J.A.489. It explained that the government bore no responsibility for Rouse's belated notice of expert testimony because the government had complied with the expert-disclosure rules laid out in Federal Rule of Criminal Procedure 16. J.A.488. Rouse, meanwhile, had no excuse in the court's eyes for delaying his expert disclosures until the day of trial, and the court found that Rouse's last-minute disclosure would seriously impair the government's ability to cross examine his expert. J.A.488-89; *see also* J.A.337 (explaining that the government had "one lawyer in the case" and that it was "physically impossible for him to review" the expert's qualifications and

writings and "prepare for cross of an expert" during trial). Because "it would be grossly unfair to the [g]overnment" to let the defense expert testify, the district court exercised its discretion to exclude that expert from trial. J.A.489.

## B.   Standard Of Review

This Court reviews a district court's decision to exclude an expert due to untimely notice for an abuse of discretion. *See United States v. Holmes*, 670 F.3d 586, 598 (4th Cir. 2012); *United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995).

## C.   Argument

Federal Rule of Criminal Procedure 16(b)(1)(C) sets forth a defendant's duty to disclose information concerning potential expert witness testimony. That rule provided, at the time of Rouse's trial, that "the defendant must, at the government's request, give to the government a written summary of any [expert] testimony . . . if (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies." Fed. R. Crim. P. 16(b)(1)(C) (2021).[6] The government here made such a request for disclosure of defense expert testimony,

---

[6] The 2022 amendments to the Federal Rules of Criminal Procedure also altered a defendant's expert-disclosure obligations under Rule 16(b)(1)(C) so that they continued to mirror the government's disclosure and timing obligations under the new version of Rule 16(a)(1)(G). *See* Fed. R. Crim. P. 16(b)(1)(C) (2023); *id.,* Notes of Advisory Committee—2022 amendment.

S.A.9 (requesting all discovery under Local Rule 16.1(c)), and provided a written summary of its anticipated expert testimony, *see supra* at 7-8.

Rouse therefore had an obligation to timely disclose any expert witnesses that he intended to call at trial. Although the then-existing version of Rule 16 was "silent as to the timing of expert witness disclosures," courts had the authority to find "that as a matter of general fairness, [a party's] disclosure was untimely." *Holmes*, 670 F.3d at 598; *accord Dorsey*, 45 F.3d at 816 ("[T]he case law is clear that it is not an abuse of discretion for a trial court to disallow expert testimony where a late proffer of evidence by the defense substantially prejudices the government in its ability to find its own expert and conduct similar testing.").

Under these standards, the district court did not abuse its discretion in excluding Rouse's proposed expert testimony. *See Holmes*, 670 F.3d at 598; *Dorsey*, 45 F.3d at 816. Rouse noticed his intent to call an expert witness "*on the first day of trial*" and that was "a formidable reason in itself for the district court to have excluded the proffered expert testimony." *Dorsey*, 45 F.3d at 816. In addition, Rouse intended to solicit highly technical testimony concerning the scientific standards applicable to forensic laboratories and various issues that can affect the reliability of mass spectrometry, gas chromatography, and infrared spectrometry. *See* J.A.147, J.A.150-51; *see also* J.A.147 (pointing to *United States v. Gomez-Paz*, No. 10-cr-567, 2011 WL 4345891 (D. Colo. Sept. 16, 2011)). The

court and the government both reasonably believed that the government's lone attorney could not prepare cross-examination on such testimony while putting on the government's case-in-chief. J.A.489; J.A.886; *cf. Holmes*, 670 F.3d at 599 ("The [g]overnment expressed concern, unrebutted by Holmes, as to its ability to locate and prepare adequate cross-examination and rebuttal expert witnesses in time for trial.").

Rouse does not contest that his notice was untimely or that its last-minute nature threatened to prejudice the government. Br. 38-40. Instead, he argues that the district court should have excused his tardiness because his notice was "a direct result of the Government's late submission of documents and information." Br. 40; *see also id.* at 38 (faulting the "delayed production" of the underlying data for the chemical analyses). The court did not abuse its discretion in rejecting that excuse. It reasonably found that the government had no obligation to disclose that underlying data under Rule 16. J.A.488-89; *supra* at 19-20. Moreover, the defense expert's proposed findings did not in fact hinge on that later-disclosed underlying data, but on the lab reports that the government had provided Rouse months before trial. *See* J.A.150-51; *cf. United States v. Iskander*, 407 F.3d 232, 239 (4th Cir. 2005) (affirming exclusion of expert testimony despite defendant's argument that "timeliness should not be an issue for the government" given a "'late' superseding indictment").

Lastly, the district court's decision to exclude Rouse's expert from trial did not "substantially sway[]" the jury in deciding to convict Rouse and was thus at most harmless error. *McLean*, 715 F.3d at 143. Rouse's expert would have attempted to persuade the jury to distrust the government experts' controlled-substance analyses. But the jury would still have had ample grounds to convict Rouse even without the government's expert testimony. *See supra* at 16-17.

Moreover, Rouse's proposed expert would have had little persuasive force. That expert would have questioned the reliability of the government scientists' controlled-substances analyses because he lacked information about the chain of custody, testing procedures, instrument calibration, and analysts' qualifications. J.A.150-51. Yet the government's experts filled in those gaps at trial. *See, e.g.*, J.A.534-35 (methamphetamine expert narrating chain of custody); J.A.548-49 (methamphetamine expert explaining that "a blank is performed" before each test, that the instruments are maintained "monthly," that the lab "review[s] our data to make sure that it is consistent with proper operation," and that the "machines were working properly" here); J.A.560-61 (heroin expert affirming that she would realize if instruments "were not working properly" and that they were "working properly" here). Furthermore, the jury had access to a wealth of lay opinion testimony and circumstantial evidence that Rouse dealt

large amounts of heroin and crystal methamphetamine—corroborating the controlled-substances analyses by the government's experts. *See supra* at 16-17.[7]

## III. The District Court Imposed A Procedurally And Substantively Reasonable Sentence.

Rouse contends (Br. 41-44) that his below-Guidelines sentence is procedurally and substantively unreasonable. He is mistaken.

### A. Background

The Probation Office prepared a presentence report (PSR) for Rouse, and, after both parties objected, revised that report. J.A.965-1001; J.A.1002-30. Rouse objected to several of the revised PSR's recommendations: a drug-quantity finding and ensuing base offense level of 34, U.S.S.G. § 2D1.1(a)(5),

---

[7] Rouse makes a passing suggestion that excluding his belatedly noticed expert infringed upon his constitutional right to mount a defense. Br. 39-40. Yet "the crux of his complaint is that he was not allowed to present a particular defense" through this expert testimony, as opposed to not being able to present any defense at all. *United States v. Malloy*, 568 F.3d 166, 177 (4th Cir. 2009). Therefore, "it is better framed as an evidentiary argument." *Id.*

In any event, a defendant's Sixth Amendment "right to present a defense is not absolute," *United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003), and "may thus bow to accommodate other legitimate interests in the criminal trial process," *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citation and internal quotation marks omitted). That is what happened here when the court ensured fair play and the integrity of the adversary process by excluding belatedly noticed expert testimony. *See United States v. Lundy*, 676 F.3d 444, 452 (5th Cir. 2012) (discussing *Taylor v. Illinois*, 484 U.S. 400 (1988)). And any Sixth Amendment violation would not warrant reversal here, given the overwhelming evidence that still established Rouse's guilt.

(c)(3); a two-point violent conduct enhancement, U.S.S.G. § 2D1.1(b)(2); and a two-point drug premises enhancement, U.S.S.G. § 2D1.1(b)(12). J.A.965-72; J.A.1026-28.

At sentencing, the district court overruled these objections. It rejected Rouse's drug-quantity challenge and set his base offense level at 34. J.A.840-41. In doing so, the court credited statements from Rouse's drug supplier, Tierra Atkins, who had admitted to selling "9 ounces of methamphetamine to Rouse and Rich approximately 30 to 40 times" starting around "the end of 2018." J.A.1011; *see also* J.A.819-20; J.A.830. The court and Probation Office used Atkins's statements to conservatively estimate that Rouse trafficked 270 ounces (7,654.5 grams) of methamphetamine, which alone supported a base offense level of 34. J.A.830; J.A.841; J.A.1011; U.S.S.G. § 2D1.1(a)(5), (c)(3).[8]

---

[8] The PSR assumed that Rouse had dealt only a methamphetamine mixture of unknown purity, J.A.1011; J.A.1028, as opposed to "Ice," which the Guidelines define as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity," U.S.S.G. § 2D1.1(c), Note C. That resulted in a base offense level of 34 instead of 38, as the Guidelines punish the trafficking of "Ice" more harshly. *Compare* U.S.S.G. § 2D1.1(c)(1), *with* U.S.S.G. § 2D1.1(c)(3). The government objected to this approach, and although the district court acknowledged that the government made a "very persuasive argument" that Rouse had been dealing "Ice," the court nevertheless "accept[ed] probation's analysis . . . for purposes of discussion" and left Rouse's base offense level at 34. J.A.840-41; *see also* J.A.837-39 (summarizing evidence concerning methamphetamine purity).

The district court also concluded that Rouse had used violence during his drug-trafficking conspiracy. J.A.821-22; J.A.825-26; J.A.828; J.A.830-31. The PSR had explained that Rouse used "violence and intimidation . . . to remain undetected and/or evade convictions for" his drug-trafficking "conduct," J.A.1007, and narrated a series of incidents where Rouse used or ordered violence between 2016 and October 2019, J.A.1007-11. The court, in overruling Rouse's violent conduct objection, specifically discussed some of those incidents, including one where Rouse participated in a drive-by shooting and one where he hit a woman in the head with a gun after she confronted Rouse about shooting up someone's home. *See* J.A.821; J.A.1086-91. In making its ruling, the court noted that some of the police reports that the government had submitted alongside its sentencing memorandum and the evidence at trial ultimately justified this enhancement. J.A.825; J.A.828; *see also* J.A.1036-46 (police report); J.A.1086-91 (same).

The district court then overruled Rouse's objection to the proposed drug premises enhancement based on "the evidence at trial." J.A.833. That evidence had revealed multiple controlled buys at the places where Rouse and Rich resided and, as the district court found, demonstrated that Rouse "was absolutely the one who was controlling access to or activities at the premises," even when his name did not appear on the lease for those premises. J.A.833.

The court viewed that evidence as sufficient to establish under U.S.S.G. § 2D1.1(b)(12) that Rouse warranted the two-point increase to his offense level for maintaining a premises for drug distribution.  J.A.832-33.

After resolving Rouse's objections, the district court concluded that Rouse had an offense level of 43 and belonged in criminal history category III, yielding a Guidelines range of life imprisonment.  J.A.841.  Defense counsel and the government then presented argument on the application of the sentencing factors in 18 U.S.C. § 3553(a) to Rouse, and Rouse gave his allocution.  J.A.842-56.  Defense counsel asked for a below-Guidelines sentence of 300 months of imprisonment and focused on, among other things, Rouse's age and the need to guard against disparities between Rouse's sentence and that of Atkins, J.A.842; J.A.844-45, who had already pleaded guilty, cooperated with the government, and testified against Rouse, J.A.256-58.  The district judge acknowledged that he had considered these arguments and statements.  J.A.856.

The district court then imposed a below-Guidelines sentence of 600 months of imprisonment.[9]  J.A.860-61.  In doing so, the court invoked the

---

[9] Specifically, the district court sentenced Rouse to 420 months of imprisonment on the drug-trafficking conspiracy count (Count I), to be served concurrently with 240 months on the drug-distribution offenses (Counts II, IV, VI, and VIII) and 120 months on the § 922(g) count (Count X).  J.A.860.  The court further imposed three mandatory consecutive terms of 60 months'

§ 3553(a) sentencing factors and noted that it had "considered all those factors, even if [it did not] mention each one individually." J.A.856-57. The court thereafter highlighted "the nature and circumstances of the offense" and "the need to avoid unwarranted sentencing disparities." J.A.857; *see also* J.A.857-59 (repeatedly noting that Rouse's offenses were "serious" and "really did harm a number of people"); J.A.858-59 (explaining that "people who plead guilty and cooperate are not similarly situated" to those "who don't"). It also discussed Rouse's individual characteristics, recognizing that he was "26 years old" and suffered a "tumultuous childhood," but also had an extensive criminal history and took "pride in being a violent person." J.A.857-58. Balancing all this, the court considered but refrained from "impos[ing] a life sentence" as the Guidelines recommended, J.A.859, yet still ordered "a very lengthy" sentence that would "incapacitate[]" Rouse, "promote[] respect for law," and "provide[] just punishment," J.A.860.

After announcing its sentence, the district court stated that it would have "impose[d] the same sentence as an alternative variant sentence" even if it had "miscalculated the advisory [G]uideline range." J.A.862 (referring to *United States v. Gomez-Jimenez*, 750 F.3d 370 (4th Cir. 2014) and *United States v.*

---

imprisonment for each § 924(c)(3) count (Counts V, VII, and IX), leading to another 180 months of imprisonment. J.A.860-61.

*Hargrove*, 701 F.3d 156 (4th Cir. 2012)).  The court explained that it viewed its sentence as "sufficient but not greater than necessary for Mr. Rouse in light of all the 3553(a) factors."  J.A.862.

### B.    Standard Of Review

This Court reviews objections to a sentence's procedural and substantive reasonableness for an abuse of discretion.  *See United States v. Fowler*, 58 F.4th 142, 153 (4th Cir. 2023); *United States v. Barronette*, 46 F.4th 177, 208 (4th Cir. 2022).    When considering a district court's application of the Guidelines specifically, this Court reviews "legal conclusions *de novo* and factual findings for clear error."  *United States v. Barnett*, 48 F.4th 216, 219 (4th Cir. 2022) (citation and ellipsis omitted).

### C.    Argument

To evaluate whether a sentence is reasonable, this Court first "ensures that the district court committed no significant procedural error" in imposing that sentence.  *Barronette*, 46 F.4th at 208 (citation omitted).  "If the Court finds no significant procedural error, it then considers the substantive reasonableness of the sentence imposed."  *Id.* (citation omitted).

#### 1.  The District Court Imposed A Procedurally Reasonable Sentence.

"For a sentence to be procedurally reasonable, a district court must begin its sentencing proceeding by 'correctly calculating the applicable Guidelines

range.'" *Fowler*, 58 F.4th at 153 (citation omitted). The court must next allow "the parties the opportunity to argue for whatever sentence they deem appropriate and consider those arguments in light of all the factors stated in 18 U.S.C. § 3553(a)." *Id.* Then, with the benefit of those arguments, the sentencing court must "conduct 'an individualized assessment based on the facts before the court[] and explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.* (citation and ellipsis omitted).

The district court followed this procedure when sentencing Rouse. It calculated his Guidelines range, listened to the parties' arguments and Rouse's allocution, and then carefully explained the facts of this case and how the § 3553(a) factors factored in before imposing a below-Guidelines sentence on Rouse. *See supra* at 31-32. Rouse, however, claims that the court erred because it (1) miscalculated his advisory Guidelines range (Br. 41-43) and (2) failed to consider all the § 3553(a) factors (Br. 43). He is mistaken.

*Guidelines Calculations*. Rouse disputes (Br. 41-43) the factual findings underlying the district court's drug quantity and base offense level determination and its violent conduct and drug premises enhancements. But he cannot demonstrate clear error in those findings. And in any event, any Guidelines error would prove harmless because the court would have imposed the same

substantively reasonable sentence even if it "miscalculated the advisory [G]uideline range." J.A.862.

Rouse's attack (Br. 42) on the district court's drug-quantity finding fails because the court did not clearly err in crediting the testimony of Rouse's methamphetamine supplier and then relying on that testimony to make its drug-quantity finding. That supplier, Tierra Atkins, testified at trial that he sold Rouse nine ounces of crystal methamphetamine twice a week between "the end of 2018" and September 2019. J.A.249. That estimate tracked another witness's recollection that Rouse bought approximately "ten ounces" of crystal methamphetamine at a time from Atkins, J.A.221, and, as the district court recognized, did not contradict other testimony at trial, *see, e.g.*, J.A.819 (noting that Rouse was released from prison in November 2018 and started buying from Atkins at "the end of 2018"); J.A.830 (finding Atkins' testimony consistent with Rouse's being "involved in drug dealing with Atkins that his girlfriend didn't know about"). The court thus had sound grounds to credit Atkins' lowest methamphetamine estimate after observing Atkins' demeanor and weighing how his testimony comported with other trial evidence.[10] *See United States v.*

_____

[10] The low-end estimate that Atkins sold Rouse at least 270 ounces of methamphetamine came from a pre-trial statement that Atkins gave law enforcement—as opposed to his testimony at trial, which suggested that Atkins sold Rouse double that amount (*i.e.*, Atkins sold Rouse nine ounces twice a week rather than once a week). *Compare* J.A.249, *with* J.A.1011; *see also United States*

*Crawford*, 734 F.3d 339, 343-44 (4th Cir. 2013); *United States v. D'Anjou*, 16 F.3d 604, 614 (4th Cir. 1994).

Nor did the district court clearly err in using that estimate, as opposed to an estimate from Rich, to calculate Rouse's drug-quantity amount and base offense level. *Contra* Br. 42. After all, "if a district court's finding 'is based on [its] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.'" *United States v. Slager*, 912 F.3d 224, 233 (4th Cir. 2019) (citation omitted). That is what occurred here.

Rouse next mistakenly claims that the district court clearly erred in applying a two-level enhancement for Rouse's violent conduct during the drug-trafficking conspiracy. *See* U.S.S.G. § 2D1.1(b)(2). As an initial matter, if Rouse wished to challenge in the district court a statement in the PSR, he had "an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *Fowler*, 58 F.4th at 151 (quoting *United States v. Terry*,

---

*v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011) (explaining that courts should use the "low end" of the drug-quantity "range to which [a] witness[] testified" when relying on "'uncertain' witness estimates").

916 F.2d 157, 162 (4th Cir. 1990)).  "Without such a showing, 'the government meets its burden of proving those facts by a preponderance of the evidence, and the district court is free to adopt the findings of the presentence report without more specific inquiry or explanation.'"  *Id.* (citation omitted).

But Rouse did not make such a showing when it came to the violent conduct allegations in this case, as he objected in the district court only to the reliability of the allegations of violence without also disputing their accuracy. J.A.965-66; J.A.971; *see also Terry*, 916 F.2d at 162 (defendant's claim that information was "unreliable" without contending that it was "inaccurate" not sufficient).  That left the court free to conclude that the government had met its burden to prove the violent conduct described in the PSR and accept the PSR's factual findings on that issue.  *See Fowler*, 58 F.4th at 151.  Those findings included the fact that Rouse used "violence and intimidation . . . to remain undetected and/or evade convictions for" his drug-trafficking "conduct." J.A.1007.

Moreover, the other evidence at sentencing sufficed to show that Rouse used or directed the use of violence during his drug-trafficking conspiracy. Evidence from trial revealed that Rouse's affiliates attacked the confidential informant in this case once Rouse discovered his status as an informant. J.A.421-22; *see also* J.A.1008 n.3 (noting that Rouse wanted the informant

"handled").  Moreover, after the drug-trafficking conspiracy began in January 2016, Rouse separately aided an attempted murder, shot up a house, and hit a woman in the face with a gun.  J.A.1036-37; J.A.1046; J.A.1086-89.  *See Barronette*, 46 F.4th at 209 (affirming application of violent conduct enhancement where defendant's statements directed use of violence); *United States v. McDonald*, 43 F.4th 1090, 1098 (10th Cir. 2022) (finding similar threats and incidents supported enhancement).

Rouse's challenge to the district court's drug premises enhancement also fails as a matter of fact and law.  The record refutes his suggestion (Br. 43) that he categorically lacked "a possessory interest in" or "exclusive control over the access to or activities occurring within" all the places from which he dealt drugs. Although his partner Rich leased most of the residences where she and Rouse dealt drugs, Rouse rented a hotel room where they dealt drugs for more than a month.  J.A.211; J.A.611; *see also United States v. Harwell*, 849 F. App'x 437, 439 (4th Cir. 2021) (per curiam) (affirming enhancement's application based on, among other things, defendant's lease or rental of hotel room).  Furthermore, the residences leased by Rich where she and Rouse planned to traffic drugs are attributable to him under the drug premises enhancement.  *See United States v. Rich*, 14 F.4th 489, 495-97 (6th Cir. 2021) (explaining that the drug premises enhancement may apply based on the reasonably foreseeable actions of another

if taken in furtherance and within the scope of jointly undertaken criminal activity).

Regardless, the drug premises enhancement can apply even where a given defendant lacks a possessory interest in or a right to exclude others from a particular location. *See Barnett*, 48 F.4th at 220-21. The enhancement is a flexible and fact-specific one, and "courts have considered factors such as the defendant's ready access to the premises, staying overnight, the defendant's frequency at the premises, and the defendant's participation in the drug activity there." *Id.* Here, the district court reasonably relied on these kinds of factors and the trial evidence when it applied this enhancement. J.A.833 (noting that Rouse and Rich's residences were "the places where they were staying together" and "dealing out of" and that Rouse "control[led] access to or activities at the premises"); *accord, e.g.*, J.A.437-40 (controlled buys from Rouse and Rich at one of their residences); J.A.613-15 (Rouse selling drugs out of trailer where he and Rich resided); J.A.621-24 (Rouse resuming control of dealing at joint residence upon release from prison).

In sum, the district court correctly calculated Rouse's offense level and Guidelines range. But if the court had made an error on this front, that error would have proven harmless. The court "explicitly said that it would have given the same sentence" even if it had miscalculated Rouse's Guidelines range.

*United States v. Gondres-Medrano*, 3 F.4th 708, 721 (4th Cir. 2021); *see* J.A.862 (district court's statement). Any Guidelines errors are thus harmless as long as Rouse's "sentence would be [substantively] reasonable even if" a contested "[G]uidelines issue had been decided in [his] favor." *Gondres-Medrano*, 3 F.4th at 721 (citation omitted).

That would have been the case here for Rouse's sentence of 600 months of imprisonment, even assuming that Rouse had prevailed on all his Guidelines objections and secured a Guidelines range of 300 months.[11] The district court "conducted a thorough, individualized assessment of [Rouse] and his offense conduct," *United States v. Nance*, 957 F.3d 204, 215 (4th Cir. 2020), which principally involved his directing a large methamphetamine-trafficking operation and participating in serious violent conduct over many years, *see* J.A.856-60. Such factors would render a 600-month sentence (twice Rouse's lowest possible Guidelines range) substantively reasonable. *See Nance*, 957 F.3d

---

[11] Rouse had a criminal history category of III. Assuming that some or all of the errors he alleged occurred in the Guidelines calculation, his offense level could have decreased to 41, 39, 37, or 35, depending on the error or errors. His Guidelines range could have therefore been: 360 months-life (offense level of 41), 324-405 months (offense level of 39), or 300 months (because of the mandatory-minimum sentences for his drug-trafficking convictions and three separate § 924(c) convictions, which each required consecutive sentences).

at 217 (collecting cases approving sentences roughly three times a Guidelines maximum).

*Section 3553 Factors.* Rouse's other claim of procedural sentencing error also lacks merit, for nothing in the record suggests that the district court failed to consider a § 3553(a) factor. After all, its "sentencing explanation" did not "need [to] be 'exhaustive' or 'robotically tick' through" those factors. *United States v. Friend*, 2 F.4th 369, 379 (4th Cir. 2021) (citations omitted). It needed only to "'provide some indication that the court considered [these] factors' and applied them to the particular defendant." *Nance*, 957 F.3d at 212-13 (citation omitted). Here, the court listed and invoked these factors, noted that it had considered them, and explicitly discussed and analyzed how most of them applied in this case. *Supra* at 31-32; J.A.856-60; *see also United States v. Montes-Pineda*, 445 F.3d 375, 380-81 (4th Cir. 2006) (district court sufficiently considered § 3553(a) factors when it invoked three of those factors without explicitly mentioning § 3553(a) and used undisputed facts concerning those factors to explain its sentence).

If anything, "the record directly refutes" Rouse's suggestion that the district court did not consider the § 3553(a) factors he identifies in his brief. *United States v. McDonald*, 28 F.4th 553, 570 (4th Cir. 2022); *see* Br. 43. The court discussed the nature and circumstances of his offenses, J.A.857-58 (calling them

"serious" and noting that they "harm[ed]" people); considered Rouse's personal history including mitigating factors, J.A.857-58 (discussing his "pride in being a violent person," "26 years" of age, "tumultuous childhood," "addiction issues," and criminal history); and compared him with his co-conspirators, J.A.858-59 (noting that those who plead guilty and cooperate stand in a different sentencing posture). Finally, the court acknowledged that a 50-year sentence would make Rouse "a very old man" upon his release, but it deemed that below-Guidelines sentence necessary to incapacitate Rouse, "promote respect for the law," and provide just punishment. J.A.860.

## 2. The District Court Imposed A Substantively Reasonable Sentence.

A defendant's below-Guidelines sentence is "presumptively reasonable." *United States v. Gillespie*, 27 F.4th 934, 945 (4th Cir. 2022) (citation omitted). Rouse can rebut this presumption of reasonableness only "by showing that [his] sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Bennett*, 986 F.3d 389, 401 (4th Cir. 2021) (citation omitted).

Rouse cannot make that showing. "Here, the district court thoroughly addressed the § 3553(a) factors, ultimately varying downward from the [G]uidelines range." *Bennett*, 986 F.3d at 401. Though the court stated that it considered all the factors listed in § 3553(a), J.A.857, it specifically weighed in

its colloquy: the nature and circumstances of Rouse's offenses; Rouse's age, background, criminal history, and pride in being violent; the need to guard against unwarranted disparities amongst similarly situated defendants; and the type and length of a sentence necessary to protect the public, promote respect for the law, and provide just punishment. J.A.856-60. That careful weighing demonstrates that the court imposed a substantively reasonable sentence.

Rouse's argument (Br. 44) that his sentence is substantively unreasonable given the "disparity between" his sentence and that of Atkins is meritless. A district court must consider "the need to avoid *unwarranted* sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (emphasis added). But that concern is inapposite where two defendants are not "similarly situated"; in that circumstance, the differences between the defendants may make a sentencing disparity warranted. *Gillespie*, 27 F.4th at 945. As this Court has repeatedly stated, defendants who "opt to go to trial are not similarly situated to those who plead guilty and cooperate with the government." *Id.*

That distinction is present here. Atkins pleaded guilty, entered into a favorable plea agreement that resulted in the dismissal of various charges and took certain sentencing enhancements off the table, cooperated with the government, and received the benefit of a downward departure under U.S.S.G.

§ 5K1.1.  J.A.256; J.A.260; J.A.265-66.  Rouse, by contrast, took none of these steps.  He "deliberately chose not to cooperate with the government or to accept responsibility for his crimes," and his disparity-based complaints about his sentence—which still fell short of the life sentence that the Guidelines recommended—are therefore meritless.  *Gillespie*, 27 F.4th at 945.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted.

MICHAEL F. EASLEY, JR.
United States Attorney
Eastern District of North Carolina

DAVID A. BRAGDON
Appellate Chief
Eastern District of North Carolina

KENNETH A. POLITE, JR.
Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

/s/W. Connor Winn
W. CONNOR WINN
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., NW, Ste. 1264
Washington, DC 20530
(202) 669-6551
William.Winn@usdoj.gov

April 19, 2023

## STATEMENT REGARDING ORAL ARGUMENT

The United States agrees that oral argument is not necessary in this case, because the facts and legal contentions are sufficiently addressed in the briefing.

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,670 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared on a proportionally spaced typeface using Microsoft Office 365 in 14-point Calisto MT font.

3.      This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a) because it contains no personal data identifiers.

4.      This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program, is free of viruses.

/s/ W. Connor Winn
W. CONNOR WINN

**CERTIFICATE OF SERVICE**

I certify that, on April 19, 2023, I served an electronic copy of this Answering Brief for the United States on all litigants via the Court's ECF system. I certify that all participants in the case are registered ECF users and that service will be accomplished through the ECF system.

/s/W. Connor Winn
W. CONNOR WINN