NO. 22-4479

# In The
# United States Court Of Appeals
## For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

v.

**JIMMY MCKOY ROUSE,**

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON

———————

**REPLY BRIEF OF APPELLANT**

———————

**Samuel B. Winthrop**
**WINTHROP &**
  **GAINES MESSICK, PLLC**
**706 Hartness Road**
**Statesville, NC 28677**
**(704) 872-9544**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .........................................................................................................1

    I.      Introduction ........................................................................................1

    II.     Legal Argument ..................................................................................2

           (a)    *Mooreland* requires the District Court to have considered the reliability of the equipment used by the Government's forensic experts to test the seized substances .............................2

           (b)    The grant of the Government's Motion to exclude the testify of Rouse's forensic expert further frustrated the purpose of ensuring the reliability contemplated in *Daubert* and *Mooreland* ...............................................................5

           (c)    The final judgment was substantially swayed by the error of admitting the expert testimony of Gordon and Edwards .........................................................................................6

CONCLUSIONS .....................................................................................................7

CERTIFICATE OF COMPLIANCE ......................................................................9

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Anderson v. Westinghouse Savannah River Co.*,
　　406 F.3d 248 (4th Cir. 2005)......................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
　　509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993) ......................*passim*

*Rita v. United States*,
　　551 U.S. 338 (2007)..................................................................................2

*United States v. Moreland*,
　　437 F.3d 424 (4th Cir. 2006)...............................................................*passim*

**Rules:**

Fed. R. Evid. 16 ...............................................................................................1, 7

Fed. R. Evid. 702 .............................................................................................2, 6

# ARGUMENT

## I. Introduction

Rouse asks this Court to find it was an abuse of discretion to allow Gordon and Edward's testimony, as it lacked the indica of reliability contemplated in *Mooreland* and *Daubert*. Rouse also asks this Court to find that the jury was substantially swayed, and Rouse harmed, by the admittance of their testimony.

Rouse also asks this Court to find that it was an abuse of discretion to grant the Government's Motion to exclude Rouse's expert witness to testify. The notice of designation did not technically pass any statutorily set forth deadline to designate that was in place at this time. It also frustrates the purpose of *Daubert* and limits Rouse's defense to not allow the admittance of this expert for the narrowly tailored purpose that Rouse proposed in his designation. Rouse also asks this Court to find that Government's late Rule 16 submissions of their expert information contributed to the late submission of Rouse to notice his expert witness.

Lastly, Rouse asks this Court to find that the sentence was procedurally and substantively unreasonable in imposing a sentence of 600 months, and specifically created a large sentencing disparity between Rouse and the codefendants wherein Rouse received 384 months, or 32 years, of additional active time in custody.

## II. Legal Argument

### (a) *Mooreland requires the District Court to have considered the reliability of the equipment used by the Government's forensic experts to test the seized substances*

The Government has argued in their Brief that the District Court properly found that Rule 702 of the Federal Rules of Evidence and *Daubert* were satisfied when each of the Government's forensic witnesses testified. (Govt Brief, p 20). The Government seems to rely on the opinion of *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), which was overruled by *Rita v. United States*, 551 U.S. 338 (2007) on other grounds.

The *Daubert* standard sets forth what Courts must consider in determining whether the expert testimony is admissible under Rule 702: "(1) scientific, technical, or other specialized knowledge that (2) will aid the trier of fact to understand or resolve a fact at issue. *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006); citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993). *Mooreland* states that the "the first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable – that is, whether it is supported by adequate validation to render it trustworthy." *Id*. *Mooreland* requires the Court to focus on the "reliability" of the scientific, technical, or other specialized knowledges through looking at the "'principles and methodology' employed by the expert, not the conclusions reached.'" *Id.*; citing *Daubert*, 509 U.S. at 594-5.

In *Mooreland*, this Court held that "[i]n evaluating the admissibility of the testimony, the court should consider a variety of factors, including whether the method used is generally accepted in the scientific community; the rate of error, if known; the existence and maintenance of standards; and whether the expert's work has been subjected to peer review. *Mooreland*, at 431 (4th Cir. 2006); citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005). *Mooreland* therefore contemplates that the existence and maintenance of standards used to clean and sanitize the equipment would be relevant to the reliability of the methodology.

Rouse's examination of both forensic experts Gordon and Edwards in District Court focused on the reliability of the testing. The Government correctly cited in their brief that the expert testified to the methodology employed, and procedures used of their tests. (Govt Brief, 17). However, the expert's testimony did not go to the procedures used for cleaning and sanitizing the instruments used by the expert in employing the tests. The forensic expert Gordon testified here that although the maintenance reports of the equipment or instruments used in the test could be obtained, he did have these records and did not testify how or when the maintenance was performed. (JA470-471 & JA547-548). Similarly, forensic expert Edwards testified that the testing mechanism is reliable, but did not testify or produce the maintenance records for the machines or instruments used for the test. (JA482).

The Government further argued in their Brief that "the lack of testimony or data regarding the instruments' last calibration and maintenance date did not demonstrate that they were malfunctioning, instead their calibration and maintenance statuses were simply unknown." (Govt Brief, 21). This position erroneously places a burden on Rouse to establish the Government's expert witness is reliable. It is the proffering party's obligation to establish the reliability of their expert witness. Unknown information about the reliability of the instruments used in the analysis makes the conclusions of the test in fact, unreliable.

Forensic expert Edwards acknowledged that the instruments used in the qualitative analysis of the substance must be maintained, tuned or calibrated, and this process makes the tests reliable. (JA565). The purpose of the standards set forth in *Daubert* and reiterated in *Mooreland* is to ensure reliability in expert testimony. General testimony that instruments are cleaned and sanitized in their laboratory does not prove that the instruments were cleaned and sanitized in the way that Edwards describes to establish that the tests used are actually reliable. Without sufficiently establishing the reliability of the instruments used in testing the substances, the expert testimony of both Gordon and Edwards should have been excluded.

**(b)** *The grant of the Government's Motion to exclude the testify of Rouse's forensic expert further frustrated the purpose of ensuring the reliability contemplated in Daubert and Mooreland*

The Government's brief correctly cites *Daubert* for stating that "'[v}igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' remain "the traditional and appropriate means of attacking shaky but admissible evidence.'" (Govt Brief, 20); citing *Daubert*, 509 U.S. at 596. However, this safeguard to reliability contemplated here was denied to Rouse when the District Court granted the Government's Motion to exclude his expert witness.

While Rouse was able to cross-examine Gordon and Edwards related to the sanitation and calibration records of the instruments used in their analysis, he was denied the opportunity to produce a witness in his defense that would explain the importance of why the sanitation and calibration records impact the reliability of the test. The denial of this Constitutional right for Rouse to mount a defense to the charges levied against him also further frustrates the purpose of *Daubert* to ensure the expert evidence is reliable.

Although Rouse gave late notice of his expert witness to the State, Rouse narrowly tailored the expert's testimony to the reliable methods and processes for the identification, weighing, and purity determinations of controlled substances, including methamphetamine. (JA147). The Government admits in its Brief to this Court that it submitted their expert information late in October of 2021, just three months before

the trial date and the date that Rouse submitted notice of his expert witness. (Govt Brief, 15). Other documents related to the Government's expert were produced just a week before the trial. (JA339). Although the notice was on the day before the start of the trial, the Government produced thirteen witnesses, over the course of three days, and therefore had more than a days-notice to digest the brief and narrow assertions of Rouse's expert witness.

As *Daubert* has set forth, the ability to present contrary evidence is a safeguard against evidence that if admissible, is shaky. The grant of the government's Motion to exclude the testimony of Rouse's sole witness, after the Government's late production of documents and presentation of thirteen witnesses, including two forensic experts, prohibited Rouse from presenting contrary evidence to explain to the jury the importance of calibration and sanitation records in assessing the reliability of their experts. Rouse therefore asks this Court to find that the grant of the Government's Motion to exclude the expert witness was an abuse of discretion.

### *(c) The final judgment was substantially swayed by the error of admitting the expert testimony of Gordon and Edwards*

The Government has argued that even if there was an error under the admittance of the Government's experts under Rule 702, that the error is harmless and did not substantially sway the jury because of the circumstantial evidence against Rouse. (Govt Brief, 23). However, any reasonable person is substantially swayed through conclusions of a forensic chemist in the identification and weight of a

substance because people naturally place a greater weight and importance to this evidence than they do circumstantial evidence. The circumstantial evidence here that is being relied upon by the Government requires the jury to be convinced of everything testified to by individuals, who themselves are largely accused of criminal misconduct and personally benefit by testifying against Rouse through the receipt of sentence reductions.

The jury in Rouse is therefore naturally substantially swayed through the admittance of the Government's expert forensic chemist, Gordon and Edwards. Rouse asks this Court to find that it was an abuse of discretion to deny Rouse's Motion to recuse Gordon and Edward's testimony.

## **CONCLUSIONS**

Rouse requests that this Court find it was an abuse of discretion to: (1) deny Rouse's Motion to exclude the Government's expert witnesses, Gordon and Edwards; and (2) grant the Government's Motion to exclude Rouse's expert witness. Rouse also asks this Court to find that the Government violated Rule 16's discovery requirements to Rouse pre-trial, and their late submission to Rouse's counsel related to their expert witnesses naturally caused the late submission of Rouse's expert witness. A natural remedy to this Rule 16 violation is to allow Rouse to present his expert witness' testimony.

Lastly, Rouse asks this Court to find that the sentences imposed are substantively and procedurally unreasonable. Rouse, despite not being the main alleged seller of methamphetamine, is sentenced to three hundred and eighty-four (384) months of additional active time. This sentence is in effect, a life sentence for Rouse, who would be in his seventies when he would become eligible for release.

> WINTHROP & GAINES MESSICK, PLLC
>
> /s/ SAMUEL B. WINTHROP
> SAMUEL B. WINTHROP
> 706 Hartness Road
> Statesville, North Carolina 28677
> Telephone: (704) 872-9544
> Facsimile: (704) 872-7712
> swinthroplaw@gmail.com
>
> *Counsel for Appellant*

# **CERTIFICATE OF COMPLIANCE**

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    this document contains <u>1,671 words</u>.

2. This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

This, the 28th day of April 2023.

                        Respectfully submitted,

                        WINTHROP & GAINES MESSICK, PLLC

                        <u>/s/ SAMUEL B. WINTHROP</u>
                        SAMUEL B. WINTHROP
                        706 Hartness Road
                        Statesville, North Carolina 28677
                        Telephone: (704) 872-9544
                        Facsimile: (704) 872-7712
                        swinthroplaw@gmail.com

                        *Counsel for Appellant*